FINAL

**MCGRAIL & BENSINGER LLP**
888-C 8th Avenue #107
New York, NY 10019
T. 718.434.2676
F. 718.228.7717

*Attorneys for Mindy Weiss Party Consultants, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MINDY WEISS PARTY CONSULTANTS, INC.,<br><br>       Plaintiff,<br><br>— against —<br><br>BERNARD CARL and JOAN CARL,<br><br>       Defendants. | Case No. 17-cv-850<br><br>Hon. _____ U.S.D.J<br><br>Hon._____ U.S.M.J<br><br>**COMPLAINT** |

Plaintiff Mindy Weiss Party Consultants, Inc. ("**MWPC**"), by its undersigned counsel, for its Complaint against defendants Bernard Carl and Joan Carl (the "**Carls**" or "**Defendants**"), alleges as follows:

**PARTIES**

1. MWPC, a California corporation, is a full-service event planning company that plans and creates affairs such as bar/bat mitzvahs and weddings. MWPC is wholly-owned by Mindy Weiss ("**Ms. Weiss**").

2. Defendants are individuals, husband and wife, with a residence at 216 Coopers Neck Lane, Southampton, NY 11968. Unpaid bills from Defendants' daughter Alex's wedding to Peter Campbell in the summer of 2015 is the subject of this lawsuit.

**INTRODUCTION**

3.  This is a case about Bernard and Joan Carl, two wealthy socialites residing in Southampton, London, and Washington DC, taking advantage of vendors and consultants they hired for their daughter's wedding.

4.  The series of wedding party events commenced with a rehearsal dinner on Friday, June 19, 2015, at the Carl's Southampton home (the "**Southampton Estate**"). It was followed by the actual wedding and reception on Saturday, June 20, 2015, and by a post-wedding brunch on Sunday, June 21, 2015 (the wedding events from 6/19/15-6/21/15, the "**Wedding**"). Finally, the bride and groom, together with a select group from the wedding party, continued with a second wedding celebration at the Carl's château in Champigny-sur-Veude, France.

5.  The Wedding was attended by hundreds of guests, cost several million dollars to create, and, in the words of Defendant Joan Carl, was a "magical" event at which "everyone had a great time." See, e.g., the 36-page photo collage from Brides Magazine titled "*This Couple's Multi-Day Wedding in the Hamptons and in France Will Blow You Away*," available at http://www.brides.com/blogs/aisle-say/2016/09/multi-day-hamptons-new-york-loire-valley-france-wedding-ideas-gia-canali-photography.html, a copy of which is attached hereto as **Exhibit A**.

6.  It was magical for everyone, that is, except MWPC, which, a year and a half later, is still owed $340,343.91 for its professional services and expenses, and vendors that it paid on behalf of the Carls. The Carls have refused to pay these bills, arguing that MWPC is somehow obligated to do so on their behalf. They are wrong.

## JURISDICTION AND VENUE

7. MWPC is a California corporation whose sole owner is a resident of the state of California.

8. Defendants are individuals who are residents of the state of New York.

9. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.00. MWPC seeks compensatory, incidental, and consequential damages resulting from lost opportunity and financial distress caused by the Carls multiple breaches of their obligations to MWPC. The amount of the damages sought by MWPC exceeds the sum or value of $75,000.00, exclusive of interests and costs.

10. Personal jurisdiction and venue in this district are proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b) because (1) Defendants have sufficient minimum contacts with the state of New York, (2) Defendants reside in the state of New York, and (3) a substantial part of the events or omissions giving rise to the claim occurred in the Eastern District of New York, at the Southampton Estate.

## FACTUAL ALLEGATIONS

11. On or about May 21, 2014, MWPC first met the Carls to discuss MWPC providing consulting services for the upcoming wedding of their daughter, Alex Carl, to Peter Campbell.

12. The Carls expressed an interest in an extravagant affair, never mentioning the word "budget."

13. For example, at the initial meeting and thereafter, the Carls requested that Peggy Porschen cakes be flown in from London, and that performers such as Kenny Loggins and the Vienna Boys Choir perform at the Wedding.

The Carls Hire MWPC

14. On or about June 6, 2014, the Carls signed that certain *Mindy Weiss Party Consultants Special Event Consultation Agreement* (the "**MWPC Contract**"), a copy of which is attached hereto as **Exhibit B**, pursuant to which, among other things, the Carls agreed to pay MWPC for its time and costs incurred on their behalf with respect to the Wedding.

15. From June 6, 2014, through and including the Wedding (such time period, the "**Pre-Wedding Period**"), Ms. Weiss and her staff worked feverishly to plan for the Wedding by negotiating and arranging items including décor, meals, puppy watchers, chair rentals, bands and performers, piano deliveries, etc.

16. Section 2 of the MWPC Contract provides that the base price for MWPC's consulting services would be $50,000, and that the Carls would pay an additional $750 per day per MWPC staff member (in excess of three staff members) on site for the Wedding.

17. MWPC provided 10 staff members on site at the Wedding for between three and ten days each, totaling $45,750 in professional costs in excess of the $50,000 base fee.

18. The total amount the Carls agreed to pay MWPC for professional services is $95,450.00 (the "**MWPC Professional Fees**")

19. Section 2 of the MWPC Contract also requires the Carls to pay for expenses incurred by MWPC in providing its services to the Carls ("**MWPC Expenses**").

20. MWPC incurred $50,037.43 in MWPC Expenses.

21. To date, the Carl's have only paid $25,000 (their deposit under the MWPC Contract) towards the MWPC Professional Fees and MWPC Expenses, leaving a balance due of $120,787.43 (i.e., $95,450.00 + $50,037.43 - $25,000.00). See spreadsheet showing all amounts due, a copy of which is attached hereto as **Exhibit C** (the "**Balance Due Spreadsheet**").

The Carls Enter a Second Contract, and Don't Pay What They Owe

22. From early in the Pre-Wedding Period, it became clear to Ms. Weiss and her staff that the Carls' communication and efficiency was lacking, and that this was hampering the Carls' ability to coordinate the multiple vendors ("**Wedding Vendors**") needed for an event of this magnitude and luxury.

23. Ms. Weiss and her staff informed the Carls that, without better communication and more responsiveness, the Carls would not be able to book their desired Wedding Vendors.

24. To deal with this problem, the Carls, together with the bride and groom, requested, and MWPC agreed, that MWPC would directly contract with the Wedding Vendors to whom payments were made by MWPC as reflected on the Balance Due Spreadsheet, and pay such vendors directly, in return for which the Carls would reimburse MWPC.

25. MWPC agreed to this arrangement (the "**Vendor Advance Contract**") in an effort to keep the Wedding on track.

26. By way of example, under the Vendor Advance Contract, MWPC entered into contracts with local hotels for Wedding Vendors and a van company that would shuttle Wedding guests to and from the Southampton Estate.

27. With respect to each of these contracts, MWPC agreed to advance the expenses and pay the Wedding Vendors, based upon the Carls approval (either express or

implied (such as by the Carls permitting each Wedding Vendor to service the Wedding)) of same, and agreement to promptly reimburse MWPC for these expenses.

28. MWPC fully performed under the Vendor Advance Contract by paying the applicable Wedding Vendors directly a total of $267,064.48, as set forth on the Balance Due Spreadsheet.

29. The Carls, on the other hand, have refused to reimburse MWPC with respect to these actual out-of-pocket amounts MWPC paid to such Wedding Vendors, other than one payment to MWPC of $47,508, leaving a balance due under the Vendor Advance Contract of $219,556.48.

MWPC Tries to Get Paid

30. MWPC sent the Carls several emails and had multiple conversations during the Pre-Wedding Period, in which MWPC asked, and then pled, to be repaid per the Vendor Advance Contract, and to have its then-incurred professional fees and expenses paid in full.

31. The Carls agreed to so pay, but ultimately only paid part of the agreed-to amounts.

32. Excuses for non-payment varied; on one occasion, Peter Campbell (the groom) emailed Ms. Weiss with news that only half of certain payments were being made, as the balance of the money was allegedly not available because the "bank messed up."

33. On another occasion, payment was not made purportedly because of Mr. Carl's concerns about "illegal kickbacks and undisclosed ownership" between MWPC (a California corporation) and the local Southampton hotels where the Wedding guests and Wedding Vendors were stationed during the Wedding.

6

34. As the Wedding drew closer, MWPC's cash advances on behalf of the Carls under the Vendor Advance Contract continued to add up, and Ms. Weiss and her team, as well as certain Wedding Vendors who had not yet been paid, repeatedly asked the Carls for payment, including by emailing the Carls.

35. The Carls' (and the groom's) responses to these emails were filled with promises of future payment, denials, and threats; the latter compelled MWPC to continue to advance funds on behalf of the Carls.

36. For example, on June 11 (eight days before the Wedding), Ms. Weiss emailed the groom, Peter Campbell, who was charged with making payments on behalf of the Carls, to request that MWPC and all then-unpaid Wedding Vendors be paid in full.

37. Mr. Campbell responded with a list of partial payments that the Carls had made that day, stating "[w]e know this is not in full but the best we can do right now. We would love to pay more but it seems somewhere along the line a bank messed up and sent the money to the wrong place. More to come as soon as money becomes available."

38. Ms. Weiss responded to this email, (i) requesting to be paid in full, (ii) seeking clarification of Mr. Campbell's statement that money will be paid as it "becomes available," and (iii) stating "I cannot lay out this money, I don't have it....", and "[t]here are always ways to work things out but without any communication and the silence we just cannot move forward . . . something is not feeling right here . . . ."

39. Mr. Campbell responded by reaffirming that "money got messed up by the bank" and "[y]ou should know by now that Bernie [Carl] does not respond well to this sort of thing so I hope for everyone's sake that your email doesn't blow up."

7

40. Another example of threats made in response to request for payment is with respect to Wedding Vendor Jeff Leatham, who provided flowers for the Wedding.

41. Mr. Leatham's office contacted the Carls requesting payment eight days before the Wedding, and Mr. Carl responded to that request with an email stating, among other things, that, for "people who cause harm or pain to my family. . . I am the hound from hell and at least four of these people have ended up in federal prison and at least two more have ended up in bankruptcy because of me . . . No matter what you do, at least you can be pretty confident you should never be in that 'select' category. You need to decide where you want to be on that list. I cannot make that decision for you. Bernie" A copy of this email is attached as **Exhibit D**.

42. Notwithstanding the Carls failure to perform under their contracts with MWPC, MWPC performed in full, and the Wedding was a success (!).

43. MWPC made multiple post-Wedding requests and demands for payment for the balance due, to no avail.

44. Frustrated, MWPC retained the services of Creditors Adjustment Bureau, Inc., a professional debt collector, which attempted to collect the balance due from the Carls.

45. Mr. Carl responded to the debt collector with a 20-page letter, a copy of which is attached hereto as **Exhibit E**, explaining why he does not need to pay his debt to MWPC.

46. As set forth therein, these reasons include "MWPC's lack of financial discipline" (page 6), the fact that the wedding band "got no 'play list' or direction as to what music should be played and when" (page 9), the heel protectors on certain ladies' clothing fell-off (page 9), and the fact that MWPC only arranged for the bride and her wedding party serial, instead of contiguous, pre-wedding salon appointments (page 9).

47. MWPC thereafter attempted, in vain, to negotiate an arrangement with the Carls, pursuant to which Ms. Weiss would discount the balance due to MWPC (such discounts were reflected on other versions of the Balance Due Spreadsheet, sent to the Carls at various times), if Mr. Carl would make payment.

Amount Due

48. As set forth on the Balance Due Spreadsheet, the Carls owe MWPC $120,787.43 in MWPC Professional Fees and MWPC Expenses, and $219,556.48 pursuant to the Vendor Advance Contract (the "**Vendor Advance Reimbursement**" and, together with the MWPC Professional Fees and MWPC Expenses, the "**Balance Due**"), such that the Balance Due is $340,343.91.

49. The Carls' breach of the MWPC Contract and Vendor Advance Contract also caused significant stress to MWPC's operating cash flow and required numerous man-hours of time to address, leading to indirect and consequential damages in an amount to be determined at trial.

## FIRST COUNT: BREACH OF CONTRACT

50. MWPC repeats and realleges paragraphs 1 through 49 as though each were fully set forth herein.

51. MWPC and the Carls entered into the MWPC Contract and the Vendor Advance Contract.

52. MWPC fully performed under both such contracts, by planning every detail of the Wedding and by advancing enormous sums of money on behalf of the Carls to pay for the Wedding expenses.

53. The Carls have failed to honor their bargain, by refusing to pay the Balance Due.

54. MWPC has been damaged by such breach, in an amount not less than the Balance Due.

## SECOND COUNT:
## BREACH OF IMPLIED CONTRACT

55. MWPC repeats and realleges paragraphs 1 through 54 as though each were fully set forth herein.

56. MWPC arranged for numerous Vendors to provide their goods and services to the Carls at the Wedding.

57. Pursuant to the terms of the Vendor Advance Contract, MWPC paid such vendors directly.

58. The Carls accepted these goods and services.

59. The Carls knew, or should have known, that MWPC was not going to pay the Vendors from its own pocket, as a Wedding gift or otherwise.

60. The Carls should, therefore, reimburse MWPC for the amount it spent under the Vendor Advance Contract.

61. MWPC has been damaged by such breach, in an amount not less than the Vendor Advance Reimbursement.

## THIRD COUNT:
## QUANTUM MERUIT

62. MWPC repeats and realleges paragraphs 1 through 61 as though each were fully set forth herein.

63. MWPC performed under the MWPC Contract and the Vendor Advance Contract in good faith, with the expectation that it would be paid (under the MWPC Contract) and repaid (under the Vendor Advance Contract).

64. The Carls accepted all services rendered by MWPC pursuant to the MWPC Contract and the Vendor Advance Contract.

65. The reasonable value of such goods and services is the Balance Due.

66. MWPC has been damaged in an amount not less than the Balance Due.

## FOURTH COUNT:
## PROMISSORY ESTOPPEL

67. MWPC repeats and realleges paragraphs 1 through 66 as though each were fully set forth herein.

68. The Carls clearly and unambiguously promised to pay for all services provided and expenses incurred under the MWPC Contract, and to reimburses all amounts advanced by MWPC under the Vendor Advance Contract.

69. MWPC reasonably expected the Carls to pay for the services, expenses, and goods provided by MWPC under both such contracts.

70. MWPC has been damaged by its reliance on these promises in an amount not less than the Balance Due.

## FIFTH COUNT:
## QUASI CONTRACT

71. MWPC repeats and realleges paragraphs 1 through 70 as though each were fully set forth herein.

72. MWPC fully performed under the Vendor Advance Contract.

73. As a result of this performance, the Carls were able to delight their guests and friends with a beautiful Wedding, at the expense of MWPC.

74. MWPC has been damaged in an amount not less than the Vendor Advance Reimbursement.

## SIXTH COUNT:
## UNJUST ENRICHMENT

75. MWPC repeats and realleges paragraphs 1 through 74 as though each were fully set forth herein.

76. MWPC provided goods and services to the Carls under the MWPC Contract and the Vendor Advance Contract.

77. The Carls have failed to pay for much of such goods and services.

78. The Carls have a legal and equitable obligation to pay MWPC for the amounts due to it under the MWPC Contract and the Vendor Advance Contract.

79. The Carls have been unjustly enriched, on the backs of MWPC (and ultimately Ms. Weiss, its sole owner).

80. MWPC has been damaged in an amount not less than the Balance Due.

[*remainder of page intentionally left blank*]

WHEREFORE, MWPC demands judgment be entered in its favor and against Defendants:

    (a)    awarding MWPC damages, on the First Count, in the amount of $340,343.91, plus interest thereon;

    (b)    awarding MWPC damages, on the Second Count, in the amount of $219,556.48, plus interest thereon;

    (c)    awarding MWPC damages, on the Third Count, in the amount of $340,343.91 plus interest thereon;

    (d)    awarding MWPC damages, on the Fourth Count, in the amount of $340,343.91, plus interest thereon;

    (e)    awarding MWPC damages, on the Fifth Count, in the amount of $219,556.48, plus interest thereon;

    (f)    awarding MWPC damages, on the Sixth Count, in the amount of $340,343.91, plus interest thereon;

    (g)    awarding MWPC consequential, incidental, nominal, and punitive damages, in an amount to be determined at trial;

    (h)    requiring that Defendants pay MWPC's costs and expenses, including its reasonable attorneys' fees, incurred in this action; and

    (i)    providing MWPC such other and further relief as the Court deems just and proper.

DATED:  February 15, 2017
              New York, New York

              MCGRAIL & BENSINGER LLP

              /s/ Menachem M. Bensinger
              Menachem M. Bensinger, Esq.
              888-C 8th Ave #107
              New York, New York 10019
              Telephone:  (718) 434-2676
              Facsimile:  (718) 228-7717

              *Attorneys for Mindy Weiss Party Consultants, Inc.*