# MCGRAIL & BENSINGER LLP

Menachem M. Bensinger
888-C 8th Avenue #107
New York, NY 10019
Ph: (718) 434-2676 Fax: (718) 228-7717

March 13, 2016

**VIA ECF**

The Honorable Gary R. Brown
United States Magistrate Judge
United States Courthouse
100 Federal Plaza
Central Islip, New York 11722

Re: <u>17-cv-850 (LDW)(GRB)</u>

Dear Judge Brown-

    We represent Mindy Weiss Party Consultants, Inc. ("**MWPC**"), plaintiff in the above captioned action (the "**Action**").  As your Honor is aware, MWPC and the above captioned defendants (the "**Defendants**") participated in a lengthy settlement conference in your Court on February 5, 2018 (the "**Settlement Conference**"), which culminated in a so-ordered settlement agreement (the "**So-Ordered Settlement**") being placed on the record.  As part of the So-Ordered Settlement, the Court, while noting that the "deal was done" regardless as to whether it was ultimately reduced to a writing, ordered the parties to finalize their written expression of the So-Ordered Settlement (with whatever "bells and whistles" the parties and their counsel deemed appropriate) by February 20, 2018, and for the two settlement payments (one to Plaintiff and one to a charity) to be made by March 15, 2018.  <u>See generally</u> the transcript of the Settlement Conference, attached hereto as **Exhibit A**.

    We write today to inform the Court of a dispute that has arisen between the parties with respect to one provision of the So-Ordered Settlement, and seeking an Order from the Court clarifying such provision.[1]

---

[1]    Although the Court required that the written agreement be signed by February 20, MWPC has been unable to comply with this directive, due to lengthy delays caused by Defendants (including due to illness, other professional commitments, and otherwise).  MWPC has sent Defendants approximately 14 emails since the Settlement Conference, in which it either requested the documents that Defendants chose to draft, or else sought confirmation that the agreement was final and ready to execute.

By way of background: since the Settlement Conference, the parties' counsel have exchanged and negotiated multiple drafts of a written settlement agreement and general releases. However, on March 7, 15 days *after* the parties were directed to have finalized the written agreement, Defendants raised for the first time a new and unrelated issue: they claimed that MWPC had retained after the wedding (which occurred *almost three years ago*) certain items belonging to the bride and groom, specifically "a set of handmade watercolors, one of each of which was placed on each table at the reception, identifying the table, and in identifying each, naming places that are important to [groom] Peter and [bride] Alex. . . [and] a handwritten seating chart, or map prepared by Alex . . . .". See email attached hereto as **Exhibit B**.

In response to this email, MWPC (through counsel) informed Defendants that it did not have these items, and requested, again, that Defendants confirm that the settlement agreement draft MWPC had previously sent Defendants was final and ready for execution. See email attached hereto as **Exhibit C**.

Two days later, on March 9, and in response to the foregoing dialogue regarding the seating cards and seating chart, Defendants surprisingly sent MWPC new drafts of the settlement agreement and releases, in which the bride and groom (Alex and Peter) were *removed* as releasing parties, but *remained* as parties receiving releases. See email attached as **Exhibit D**.

MWPC responded to these drafts with an email stating that either the bride and groom could be parties to the settlement agreement (MWPC's preference), thereby tendering and receiving releases, or else they would need to be removed entirely. But, being the recipient of a release, and not tendering one, was not the settlement. See email attached as **Exhibit E**.

Shockingly, Defendants responded to this email by asserting that the Court's So-Ordered Settlement provides a *one-way* release of Alex and Peter, with them having an option of providing the release back to MWPC. See email attached as **Exhibit F**.

Defendants' position is plain wrong (and bordering on absurd); MWPC never intended to, and did not, release non-parties Alex and Peter unless it received a mutual release as well, and the Court's colloquy with Defendants' counsel clearly shows that the Court's direction and recitation of the settlement was consistent with MWPC's intent. See p. 11 of attached transcript, where the Court noted in discussion with Defendants' counsel that Alex and Peter would be "ill advised not to [tender releases]" and, thereby, not "receive the benefit of the settlement."

We respectfully ask that the Court issue an order clarifying that Alex and Peter Campbell did not receive a one-way release from MWPC in the So-Ordered Settlement. We are available at the Court's convenience to address any questions.

Respectfully,

McGrail & Bensinger LLP

By: Menachem M. Bensinger, Partner
*Counsel to Mindy Weiss Party Consultants, Inc.*

Cc via email and ECF: Douglas Capuder, Esq., counsel to Defendants

2

# Exhibit A

## Transcript

```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF NEW YORK

---------------------------X Docket#
MINDY WEISS PARTY            : 17-CV-00850-GRB
CONSULTANTS, INC.,           :
            Plaintiff,       :
                             :
    - versus -               : U.S. Courthouse
                             : Central Islip, New York
                             :
CARL, et al.,                : February 5, 2018
            Defendants       :
---------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR SETTLEMENT CONFERENCE
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

<u>**For the Plaintiff**</u>:          **Gabrielle Yvonne Vazquez, Esq.**
                             **Menachem Bensinger, Esq.**
                             McGrail & Bensinger LLP
                             888-C 8th Avenue #107
                             New York, NY 10019


<u>**For the Defendant**</u>:          **Douglas Capuder, Esq.**
                             Capuder Fazio Giacoia, LLP
                             90 Broad Street
                             New York, NY 10004




<u>**Transcription Service**</u>:     <u>**Transcriptions Plus II, Inc.**</u>
                             61 Beatrice Avenue
                             West Islip, New York 11795
                             <u>laferrara44@gmail.com</u>


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1    THE CLERK:  Calling case 17-CV-850, Mindy Weiss
2    Party Consultants, Inc. v. Carl et al.
3    Counsel, please state your appearance for the
4    record.
5    MS. VAZQUEZ:  Good afternoon, your Honor.
6    Gabrielle Vazquez from McGrail & Bensinger LLP,
7    on behalf of the plaintiff.
8    THE COURT:  Excellent.
9    MR. BENSINGER:  Good afternoon, your Honor.
10   Menachem Bensinger from McGrail & Bensinger on
11   behalf of plaintiff and my client, Mindy Weiss is here
12   with us, as well.
13   THE COURT:  Please, thank you. Ms. Weiss, thank
14   you for coming.  Counsel, welcome back.
15   Go ahead.
16   MR. CAPUDER:  Doug Capuder, your Honor, of
17   Capuder Fazio Giacoia for Mr. and Mrs. Carl and Mr. Carl
18   is with me.
19   THE COURT:  Excellent.  Mr. Carl, thank you for
20   coming.  And the reason I take time to thank the clients
21   for coming is because we are here for a settlement
22   conference and at a settlement conference, I make no
23   decisions.  That's right.  The only time I get to be not
24   judgmental is today.
25   So the point of this exercise is to see if

Transcriptions Plus II, Inc.

3

Proceedings

1   there's a decision that you all can reach that will avoid
2   or will be otherwise a long, unpleasant, expensive and
3   risky litigation process that requires you to travel to
4   Central Islip, even when the weather is terrible and even
5   when you don't want to be here.
6           So with that in mind, you might think, gee,
7   that judge, it sounds like he wants us to settle and I
8   do.  I think it's smart but not my place to say today.
9   It's up to you.
10          And in that regard, to the extent that --
11  ma'am, are you a lawyer?
12          MS. WEISS:  Me?
13          THE COURT:  Yes.
14          MS. WEISS:  No.
15          THE COURT:  Sir, how about you?
16          MR. CARL:  Yes, your Honor.
17          THE COURT:  You are a lawyer?  I
18          MR. CARL:  I don't practice but I am trained --
19          THE COURT:  Well, all right.  Then you need a
20  refresher because it's been a while.
21          MR. CARL:  You're right.
22          THE COURT:  There's a rule in this book, the
23  Rule of Evidence applies to today and what is says is
24  what we day today cannot be used at the trial.  In other
25  words, if we don't settle, you can't go say, you know, at

4

Proceedings

1  that settlement conference, he said and she said and the

2  judge -- we don't do that.

3           And the reason we do that, it's a really smart

4  rule, it's to make you feel more comfortable talking, so

5  we can talk through solutions and not worry about every

6  word we say, right, because it's not going to be used

7  against you.  It's the opposite of the cop shows you see

8  on TV.  You know, everything you say will be used -- it's

9  the opposite, right?  It's to make you feel more

10 comfortable not less comfortable, okay?

11          So with that in mind, I would also ask that

12 counsel if it's okay with them, we'll go off the record

13 and I will talk to the sides separately and if there's

14 something you want to share with me, and you don't want

15 me to share it, I'll do my best to honor that commitment,

16 okay?

17          MR. CAPUDER:  That's fine, your Honor.

18          THE COURT:  Good?  You're good with that?

19          MS. VAZQUEZ:  Yes.  Yes, your Honor.

20          THE COURT:  All right.  We're going off the

21 record.

22          (Off the record.)

23          THE COURT:  All right.  We are back on the

24 record.  Let the record reflect I have spent an

25 extraordinary amount of time with the parties, discussing

5

Proceedings

1  the risks and costs of continued litigation, as compared

2  to the benefits of settling and I am pleased to report

3  that we have a settlement of this matter in principle and

4  I will add before we even go into the details, that I

5  want to commend the parties for their work today.  I

6  think everyone did a fine job and I think you managed

7  jointly to take  pile of lemons and convert it to

8  lemonade.  Right?  You made something good out of a

9  touch situation.  So thank you for that.

10          So with that said, I am going to sketch out

11  what I understand of the agreement.  The agreement

12  involves a resolution of all claims and I've got the

13  lawyers to defendant details to this in a moment.  So

14  standby.

15          But it's going to be all claims, all

16  crossclaims, all counterclaims back against the parties

17  who are here and all reasonably related parties, the

18  children and the corporate owners and so forth.  We're

19  going to end this.  And it's going to be ended for a

20  payment of $100,000 from the plaintiff -- from the

21  defendant to the plaintiff, sorry.

22          And a $125,000 donation to a children's cancer

23  hospital.  What's the name of the hospital?

24          UNIDENTIFIED SPEAKER:  Children's Hospital of

25  L.A.

Transcriptions Plus II, Inc.

6

Proceedings

1          THE COURT:  Children's Hospital of L.A.  Again,
2   I think a phenomenal result and I thank you for that.
3          There will be, as I understand it, non-mutual
4   general releases but there will also be a
5   nondisparagement clause which means we won't say bad
6   things about each other and --
7          MR. CAPUDER:  No.  No, we're -- our view is
8   that the press release stands in place of --
9          THE COURT:  Well --
10         MR. CAPUDER:  -- a nondisparagement clause
11  because the press release --
12         THE COURT:  In place of it.
13         MR. CAPUDER:  -- the press release is something
14  that is enforceable and tangible, so --
15         THE COURT:  Okay.
16         MR. CAPUDER:  -- I would rather not get bogged
17  down into the language of what nondisparagement means.
18         MR. BENSINGER:  Your Honor, I think
19  nondisparagement are part of every settlement.  I am not
20  sure why that's objectionable.
21         THE COURT:  I agree but on the other hand, I
22  will say this.  You have agreed to a -- I am going to get
23  into that next -- a press release which is quite detailed
24  as to the parties' position and so forth and irrespective
25  of whether or not there's a nondisparagement clause, it

7

Proceedings

1   would be inadvisable for anyone to say anything beyond

2   that, right?  So I think either way we're probably going

3   to not talk much about this, is that a fair assumption or

4   is that a bad assumption?

5          MS. VAZQUEZ:  Your Honor, I think that's a fair

6   assumption but I don't understand why we wouldn't be able

7   to agree to it, if all parties are in agreement that

8   they're not going to disparage.  Let's just get it in the

9   agreement.  The press release doesn't cover future

10  communications.

11         MR. CAPUDER:  We're concerned about that.  It's

12  not an issue that we're willing to agree to.  The press

13  release, from our perspective, an adequate way to cover

14  that.

15         MS. VAZQUEZ:  What is the concern?

16         MR. CAPUDER:  They're unenforceable.  They're

17  difficult to police.  They raise questions that permit

18  people from responding to inquiries from reporters.  It's

19  -- I just think -- this is not something that I've

20  typically done in settlements and I think it's an

21  inappropriate contract provision.

22         MR. BENSINGER:  Listen, your Honor, I don't

23  think there's a benefit in me reciting how many

24  settlement agreements I have that have included

25  nondisparagement.  This is a consensual settlement and it

Transcriptions Plus II, Inc.

8

Proceedings

1  has to be something that the parties agree to.  I

2  appreciate that.

3             I mean, maybe we can speak for two minutes off

4  the record.  Does that make sense?  Whatever --

5             THE COURT:  Sure.  Why don't you go ahead and

6  do that.

7             MR. BENSINGER:  Thank you, your Honor.

8             (Off the record)

9             THE COURT:  So we are proceeding without a

10  nondisparagement clause.  At the risk of asking another

11  question, I will regret, I assume that -- as I think

12  about it, I assume the settlement is -- the terms are not

13  confidential, am I right about that or are we sealing

14  this record?  That's the only thing I need to know.

15             MR. CAPUDER:  It seems to me the press release

16  says that there's  settlement.

17             THE COURT:  So you want this sealed.

18             MR. CAPUDER:  I don't.  I --

19             THE COURT:  You don't care.

20             MR. BENSINGER:  I --

21             THE COURT:  Okay.

22  (Counsel and client confer)

23             THE COURT:  I think it's better -- yes?  Are

24  you okay with that?  That's good because I think I can

25  give you some things that might help both of you in the

Transcriptions Plus II, Inc.

9

Proceedings

1   future but go ahead.

2           MR. CAPUDER:  Can I have just a second?

3           THE COURT:  Sure.

4   (Counsel and client confer)

5           MR. CAPUDER:  How about this?  The parties are

6   free to say, as the press release says, that the matter

7   has been settled in response to inquiries but the terms

8   of the settlement are confidential.

9           THE COURT:  Either way, it's up to you.  What's

10  your pleasure?

11  (Counsel and client confer)

12          MR. BENSINGER:  Well, I don't know how -- so

13  your Honor is proposing to seal the record?  I mean

14  that's what the --

15          THE COURT:  I --

16          MR. BENSINGER:  That would be the --

17          THE COURT:  That's the question.

18          MR. BENSINGER:  Okay.

19          THE COURT:  Generally, I am saying if everyone

20  agrees, I will grant the motion if you want to but you

21  don't have to and it's okay.  And if it's not sealed, I

22  have a slightly different way of handling it but it's up

23  to you.

24  (Counsel and client confer)

25          MR. CAPUDER:  Your Honor, we're fine with it

Transcriptions Plus II, Inc.

10

                        Proceedings

1   not being sealed.

2              THE COURT:  Okay, you're good?  Yes.

3              MR. CAPUDER:  Okay.

4              THE COURT:  Then we will continue.  All right

5              So I named the payments, the terms.  We're

6   going to get this done, I think we said counsel to the

7   extent you're going to work on paperwork, we'll get that

8   done in the next fifteen days and the payments will be

9   made on or before, I think we said March 15th.  Did I get

10  that right?

11             MR. CAPUDER:  Correct.

12             THE COURT:  All right.  What other terms would

13  you like to add?  And I am going to extend that courtesy

14  to both counsel.

15             MR. CAPUDER:  Thank you, Judge.  Releases would

16  be from Ms. Weiss and Mindy Weiss, P.C. --

17             THE COURT:  Keep your voice up.

18             MR. CAPUDER:  -- in favor of Mr. Carl, Mrs.

19  Carl, Peter Campbell and Alex Campbell, the bride and the

20  groom.

21             THE COURT:  Okay.

22             MR. CAPUDER:  And although I haven't spoken to

23  Alex and Peter, we would have releases in favor of Mindy

24  Weiss personally, Mindy Weiss, P.C. by Mr. Carl and Mrs.

25  Carl and subject to their approval from Alex Campbell and

                  Transcriptions Plus II, Inc.

11

Proceedings

1   Peter Campbell.

2           THE COURT:  Right.  And you can tell them that

3   the judge said they would be ill-advised not to do so,

4   obviously as that would be smart to get the benefit of

5   the settlement.

6           Go ahead.

7           MR. CAPUDER:  The settlement would be a full

8   accord and satisfaction of all claims reflected by the

9   pleadings of the plaintiff and the exhibits and there's a

10  representation in warranty by the parties to the action

11  to each other, that they have not assigned any claims

12  against the other.

13          THE COURT:  Okay.  Is that it?

14          MR. CAPUDER:  Yes, sir.

15          THE COURT:  Counsel, are there any other terms

16  you needed to add?

17          MR. BENSINGER:  I'm sorry, is counsel --

18          THE COURT:  Any other terms you wanted to add?

19          MR. BENSINGER:  I just wanted to make sure

20  we're clear.  We're referring to global general releases

21  from the beginning of the world until the day of the

22  settlement between all the parties, as the Court said and

23  the related that -- children, businesses, whatnot.  I

24  think that's what we're --

25          THE COURT:  In any form whatsoever.

Transcriptions Plus II, Inc.

                                                                    12
                              Proceedings

1          MR. BENSINGER:  The full Blumberg form release.

2          THE COURT:  Good.

3          MR. BENSINGER:  Okay.  So I think we're on the

4    same page, your Honor.

5          THE COURT:  Good.  All right.  Let me add one

6    other issue which -- and again, I will remind the

7    parties, I said this off the record many times, there's

8    no prejudice for not agreeing -- there's no prejudice for

9    not agreeing to a magistrate judge, a double negative

10   contained in the congressional statutes.

11          But if you want to agree to me for handling for

12   all purposes, I can then handle the paperwork for you and

13   if the parties want, either retain jurisdiction over the

14   settlement in case there were any other issues, I am

15   willing to do that.  I obviously can't speak for Judge

16   Wexler, whose case is it as of now but if you want to

17   sign this and he signs off, I would be prepared to do

18   that.

19          Is that what we want to do?

20          MR. CAPUDER:  Yes, for our side.

21          MR. BENSINGER:  Yes, your Honor.

22          THE COURT:  All right.  Good.  So my clerk will

23   pass this around and we'll get your signatures on that

24   and Judge Wexler should sign that because he hasn't given

25   you a trial date.  Had he given you a trial date, he

13

Proceedings

1  would not let you agree to me to avoid the trial but

2  that's a discussion for another day.  All right.

3          So all the principal terms are on the record.

4  Would you slide the mic over to your client, please.  Ms.

5  Weiss, I know you've been with us all afternoon into the

6  evening.  It's almost 8 o'clock at night and I want to

7  get you out of here but I have to make sure of a couple

8  of things.

9          Do you understand the agreement that's been

10 proposed?

11         MS. WEISS:  Yes.

12         THE COURT:  Okay.  And you recognize, ma'am,

13 that if you accept these terms, meaning you'll get that

14 payment and -- that's the end of the case.  There's no

15 more claims.  There's no more crossclaims.  There's no

16 more suing.  There's no more traveling to Central Islip.

17 We're done.  That's all they wrote.  We're finished.  You

18 got that, right?

19         MS. WEISS:  Yes.

20         THE COURT:  Knowing all of that, do you agree

21 with the settlement?

22         MS. WEISS:  Yes.

23         THE COURT:  Good.  Mr. Carl, I need the mic

24 near by you.  Sir, again you've been here all afternoon.

25 You understand all the terms of the settlement.  Am I

14

Proceedings

1  correct?

2          MR. CARL:  Yes, your Honor.

3          THE COURT:  And you understand you're releasing

4  your counterclaims, any crossclaims and everything else

5  in exchange for what we've discussed and we're ending

6  this matter.  You understand that, right?

7          MR. CARL:  Yes.

8          THE COURT:  And you knowingly and intentionally

9  agreed to that, is that right, sir?

10         MR. CARL:  Yes.

11         THE COURT:  Very good.  Now in that case --

12         MR. CARL:  Your Honor --

13         THE COURT:  Sir?

14         MR. CARL:  -- I think for the record we should

15  also note that I have spoken to my wife, who is also a

16  plaintiff and she is also --

17         THE COURT:  Oh, yes.  Yes, thank you.

18         MR. CARL:  -- a defendant and -- well,

19  defendant, counterclaim, she has also agreed and she did

20  want me to state to the Court that as you said, turning

21  lemons into lemonade is a result that she is very pleased

22  with and is very happy that this money is going to a good

23  cause and is grateful to Ms. Weiss for agreeing to do

24  something that is a positive good out of all of this.  So

25  she asked me to express that gratitude.

Transcriptions Plus II, Inc.

15

Proceedings

1              THE COURT:  Good.  And you're authorized to

2    agree on behalf of her, yes?

3              MR. CARL:  I am, your Honor.

4              THE COURT:  Good.  In that case, I find that we

5    have a settlement.  All of the principal terms have been

6    placed on the record.  The parties have knowingly and

7    intelligently and voluntarily agreed to those terms and

8    entered a settlement agreement.

9              Now the lawyers can and entered a settlement

10   agreement.  Now the lawyers can and indeed should

11   memorialize this in a fancy agreement with ribbons and

12   seals and signature and notaries and so forth but even if

13   you don't, we have an agreement as of now.  So the matter

14   is settled.  All right?

15             What I will ask counsel to do, first of all

16   plaintiff, is once the paperwork is done, the payment is

17   made and so forth, file a notice of discontinuance so we

18   can administratively close the case.  But again, assuming

19   Judge Wexler signs off, I have no problem maintaining

20   with jurisdiction particularly because I was so involved

21   in this matter.  Now

22             MR. CAPUDER:  May I add something to that?

23             THE COURT:  Sure, sure, sure.

24             MR. CAPUDER:  A stipulation dismissing the

25   action with prejudice.

Transcriptions Plus II, Inc.

16

Proceedings

1        THE COURT:  You can call it whatever you want
2   because right now, we're done today.  Right?  So but
3   sure, you could call it a stipulation with prejudice.
4        MR. BENSINGER:  If it's with prejudice, then we
5   can't bring the claims again though.
6        THE COURT:  That's very funny.  I like that.
7   Thank you.
8        Now I do want to add one thing more on the
9   record and I do think this is important because I noticed
10  there's a lot of -- there's been a lot of bad feelings
11  here.  It's been tough.  I will say this.  It's 8 o'clock
12  at night.  I will stay with parties -- I am happy to stay
13  as late as it takes, as long as it takes.  If we're going
14  to settle a case, I will do it.
15       When I say that, I don't really mean it, you
16  know?  I mean, I would rather go home at some point but
17  that said, given what the outcome here, the outcome here
18  is extraordinary and I really am happy to do it for that
19  reason.  So thank you all for suggesting that idea.
20       Let me also say that these are tough
21  situations.  Weddings are very emotional, charged events.
22  There is a lot of things -- and there was a lot of
23  miscommunications, misunderstandings by the parties.
24  There was a lot of things that happened that were
25  unfortunate but let me say, I do think everyone here had

Transcriptions Plus II, Inc.

Proceedings

1  the best of intentions and I think that's particularly

2  recognized by the nature of the settlement where

3  everybody was willing to sort of put their disagreements

4  aside and say, you know what, let's do something good for

5  everyone.  So feel good about that.  And if that

6  statement helps anybody in the future deal with anything

7  that comes up, I put it out there for those purposes.

8          Anything else we need to do today?  Plaintiff

9          MS. VAZQUEZ:  No, your Honor.

10          MR. BENSINGER:  No, your Honor.  Thank you very

11  much.

12          MR. CAPUDER:  No, your Honor.  Thank you.

13          THE COURT:  All right.  Thank you, all.  Go get

14  some dinner.

15                  (Matter concluded)

16                      -o0o-

17

18

19

20

21

22

23

24

25

Transcriptions Plus II, Inc.

18

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **14th** day of **February**, 2018.

*Linda Ferrara*
Linda Ferrara

AAERT CET**D 656

Transcriptions Plus II, Inc.

Transcriptions Plus II, Inc.

19

# Exhibit B

## March 7 Email from Defendants to MWPC

## Menachem M. Bensinger

**From:**      D Capuder <dc@cfgny.com>
**Sent:**      Wednesday, March 07, 2018 5:26 PM
**To:**        Menachem M. Bensinger
**Subject:**   MWPC

Mendy: There are two items Alex wants returned and she tells me she made a point of discussing both items with Mindy and Melissa on several occasions. First, is a set of handmade watercolors, one of each of which was placed on each table at the reception, identifying the table, and in identifying each, naming places that are important to Peter and Alex. Second, is a handwritten seating chart, or map prepared by Alex. Please confirm your client has these items and will return them. Doug

Douglas Capuder
Capuder Fazio Giacoia LLP
90 Broad Street, 18th Floor
New York, New York 10004-2627
v 212 509-9595, fx 212 509-9597

**IMPORTANT:** If this email is not meant for you, please delete it now; you can be subject to legal restraint or sanction if you use it or keep it. This message is confidential and likely protected by attorney-client and other privileges. Transmission error is not meant to waive any privilege, protection or exemption from disclosure. Please contact me if you receive this message in error.

# Exhibit C

## March 7 email from MWPC to Defendants

**Menachem M. Bensinger**

| | |
|---|---|
| **From:** | Menachem M. Bensinger |
| **Sent:** | Wednesday, March 07, 2018 7:28 PM |
| **To:** | D Capuder |
| **Subject:** | Re: MWPC |

Doug, my client does not have these items. Please confirm that we are final on the settlement agreement so we can execute per the Court's order. Thank you.

On Mar 7, 2018, at 5:26 PM, D Capuder <dc@cfgny.com> wrote:

> Mendy:  There are two items Alex wants returned and she tells me she made a point of discussing both items with Mindy and Melissa on several occasions.  First, is a set of handmade watercolors, one of each of which was placed on each table at the reception, identifying the table, and in identifying each, naming places that are important to Peter and Alex.  Second, is a handwritten seating chart, or map prepared by Alex.  Please confirm your client has these items and will return them.  Doug

> Douglas Capuder
> Capuder Fazio Giacoia LLP
> 90 Broad Street, 18th Floor
> New York, New York 10004-2627
> v 212 509-9595, fx 212 509-9597

> **IMPORTANT:**  If this email is not meant for you, please delete it now; you can be subject to legal restraint or sanction if you use it or keep it. This message is confidential and likely protected by attorney-client and other privileges. Transmission error is not meant to waive any privilege, protection or exemption from disclosure. Please contact me if you receive this message in error.

# Exhibit D

## March 9 email from Defendants to MWPC

## Menachem M. Bensinger

| | |
|---|---|
| **From:** | D Capuder <dc@cfgny.com> |
| **Sent:** | Friday, March 09, 2018 3:49 PM |
| **To:** | Menachem M. Bensinger |
| **Subject:** | MWPC |
| **Attachments:** | !Settlement.K.030918.FINAL.pdf; Exh.A.Stip.Discont.030918.FINAL.pdf; |
| | Exh.B.Release.by.Plf.030918.FINAL.pdf; Exh.C.Release.by.Dft.030918.FINAL.pdf |

Mendy:

I am attaching the final settlement documents in form acceptable to my clients. We have not agreed to the cost shifting provision you requested, so there is no para. 13(f) in the settlement agreement. Alex and Peter will not approve signing a release, so I have deleted references to them as releasors. All documents are dated today.

Doug

---

Douglas Capuder
Capuder Fazio Giacoia LLP
90 Broad Street, 18th Floor
New York, New York 10004-2627
v 212 509-9595, fx 212 509-9597

**IMPORTANT:** If this email is not meant for you, please delete it now; you can be subject to legal restraint or sanction if you use it or keep it. This message is confidential and likely protected by attorney-client and other privileges. Transmission error is not meant to waive any privilege, protection or exemption from disclosure. Please contact me if you receive this message in error.

## Exhibit E

## March 12 email from MWPC to Defendants

## Menachem M. Bensinger

| | |
|---|---|
| **From:** | Menachem M. Bensinger |
| **Sent:** | Monday, March 12, 2018 1:26 PM |
| **To:** | 'D Capuder' |
| **Cc:** | Gabrielle Vazquez |
| **Subject:** | RE: MWPC |

Doug-

I hope you had a nice weekend.

As you know, Judge Brown did not *require* (non-parties) Alex and Peter to issue or receive releases, he left it as voluntary (although, in his words, they would be "ill advised not to do so" and, thereby, not "receive the benefit of the settlement" (Tr. P. 11)). I am, like Judge Brown, still in favor of them being included, and, to the extent that they have chosen to exclude themselves due to a concern that Mindy has the items you requested, I understand that all items (any printed table numbers , left over seating cards, etc.) were put on top of the Carls' kitchen counter right off the dining room.  Please have them reconsider.

If Alex and Peter refuse, though, then all references to Alex and Peter need to be redacted from the settlement agreement and releases.  In other words, either they are part of this settlement (our choice), or not.  If not, then (i) MWPC will not be releasing them (so need to delete them from MWPC release), (ii) MWPC will not be releasing the Carls' heirs, to the extent that that would include them (change to MWPC release), (iii) Alex and Peter will not be third party beneficiaries of the settlement agreement (change to settlement agreement), and (iv) the sentence in the press release regarding the bride and groom will need to be deleted (not because Mindy doesn't think they are lovely people; she just can't have anything in these documents suggest that she does not have an issue with them, given that they do not want to give a release) (change to settlement agreement).

Please let me know which way you would prefer to handle this open item, today.

Thank you.

Menachem M. Bensinger, Esq.
McGrail & Bensinger LLP
888-C 8th Ave. #107
New York, NY 10019
Ph: (718) 434-2676
Fax: (718) 228-7717
mbensinger@mcgrailbensinger.com
www.mcgrailbensinger.com

---

**From:** D Capuder [mailto:dc@cfgny.com]
**Sent:** Friday, March 09, 2018 3:49 PM
**To:** Menachem M. Bensinger
**Subject:** MWPC

Mendy:

I am attaching the final settlement documents in form acceptable to my clients.  We have not agreed to the cost shifting provision you requested, so there is no para. 13(f) in the settlement agreement.  Alex and Peter will not approve signing a release, so I have deleted references to them as releasors.  All documents are dated today.

Doug

_____

Douglas Capuder
Capuder Fazio Giacoia LLP
90 Broad Street, 18th Floor
New York, New York 10004-2627
v 212 509-9595, fx 212 509-9597

**IMPORTANT:**  If this email is not meant for you, please delete it now; you can be subject to legal restraint or sanction if you use it or keep it. This message is confidential and likely protected by attorney-client and other privileges. Transmission error is not meant to waive any privilege, protection or exemption from disclosure. Please contact me if you receive this message in error.

## Exhibit F

## March 12 email from Defendants to MWPC

## Menachem M. Bensinger

| | |
|---|---|
| **From:** | D Capuder <dc@cfgny.com> |
| **Sent:** | Monday, March 12, 2018 5:39 PM |
| **To:** | Menachem M. Bensinger |
| **Cc:** | Gabrielle Vazquez |
| **Subject:** | RE: MWPC |

Mendy:

Tomorrow I will be prepared to tender the executed agreement, defendants' release and stip as sent to you on Friday, plus the cashier's checks.

We have done all we committed to do.  The releases in favor of Alex and Peter and the wording of the press release were always part of our deal.  In contrast, we said explicitly that we could not commit Alex and Peter to a release from their end.

Doug

Douglas Capuder
Capuder Fazio Giacoia LLP
90 Broad Street, 18th Floor
New York, New York 10004-2627
v 212 509-9595, fx 212 509-9597

**IMPORTANT:**  If this email is not meant for you, please delete it now; you can be subject to legal restraint or sanction if you use it or keep it. This message is confidential and likely protected by attorney-client and other privileges. Transmission error is not meant to waive any privilege, protection or exemption from disclosure. Please contact me if you receive this message in error.

**From:** Menachem M. Bensinger <mbensinger@mcgrailbensinger.com>
**Sent:** Monday, March 12, 2018 1:26 PM
**To:** D Capuder <dc@cfgny.com>
**Cc:** Gabrielle Vazquez <GVazquez@mcgrailbensinger.com>
**Subject:** RE: MWPC

Doug-

I hope you had a nice weekend.

As you know, Judge Brown did not *require* (non-parties) Alex and Peter to issue or receive releases, he left it as voluntary (although, in his words, they would be "ill advised to do so" and, thereby, not "receive the benefit of the settlement" (Tr. P. 11)).  I am, like Judge Brown, still in favor of them being included, and, to the extent that they have chosen to exclude themselves due to a concern that Mindy has the items you requested, I understand that all items (any printed table numbers , left over seating cards, etc.) were put on top of the Carls' kitchen counter right off the dining room.  Please have them reconsider.

If Alex and Peter refuse, though, then all references to Alex and Peter need to be redacted from the settlement agreement and releases.  In other words, either they are part of this settlement (our choice), or not.  If not, then (i) MWPC will not be releasing them (so need to delete them from MWPC release), (ii) MWPC will not be releasing the Carls' heirs, to the extent that that would include them (change to MWPC release), (iii) Alex and Peter will not be third party beneficiaries of the settlement agreement (change to settlement agreement), and (iv) the sentence in the press

1

release regarding the bride and groom will need to be deleted (not because Mindy doesn't think they are lovely people; she just can't have anything in these documents suggest that she does not have an issue with them, given that they do not want to give a release) (change to settlement agreement).

Please let me know which way you would prefer to handle this open item, today.

Thank you.

Menachem M. Bensinger, Esq.
McGrail & Bensinger LLP
888-C 8th Ave. #107
New York, NY 10019
Ph: (718) 434-2676
Fax: (718) 228-7717
mbensinger@mcgrailbensinger.com
www.mcgrailbensinger.com

---

**From:** D Capuder [mailto:dc@cfgny.com]
**Sent:** Friday, March 09, 2018 3:49 PM
**To:** Menachem M. Bensinger
**Subject:** MWPC

Mendy:

I am attaching the final settlement documents in form acceptable to my clients.  We have not agreed to the cost shifting provision you requested, so there is no para. 13(f) in the settlement agreement.  Alex and Peter will not approve signing a release, so I have deleted references to them as releasors.  All documents are dated today.

Doug

_____
Douglas Capuder
Capuder Fazio Giacoia LLP
90 Broad Street, 18th Floor
New York, New York 10004-2627
v 212 509-9595, fx 212 509-9597

**IMPORTANT:** If this email is not meant for you, please delete it now; you can be subject to legal restraint or sanction if you use it or keep it. This message is confidential and likely protected by attorney-client and other privileges. Transmission error is not meant to waive any privilege, protection or exemption from disclosure. Please contact me if you receive this message in error.